DOUCET, Judge.
This appeal arises out of a suit for damages incurred by the plaintiff as a result of an intersectional accident allegedly due to a malfunctioning semaphore traffic signal located in the Village of Rosepine, Louisiana. Following trial, judgment was rendered against the State of Louisiana, through its Department of Transportation and Development (Department) for the sum of $18,-473.00. The judgment dismissed all claims against the Village of Rosepine and Louisiana Paving Company, Inc. From this judgment the Department appeals. We amend and affirm.
The substance of the issues presented on appeal are as follows:
(1)Whether the trial court erred in finding the semaphore traffic signal was malfunctioning at the time of the accident; .
(2) Whether the trial court erred in finding that the plaintiff was free of fault; and
(3) Whether the trial court erred in finding that the Village of Rosepine was not liable.[1]
The trial court, in a well reasoned opinion, has set forth the facts and has thoroughly reviewed the evidence and law pertaining to the issues presented herein. After a review of the record we adopt, as our own, the following portion of the opinion rendered by the trial judge pertaining to the facts and liability.
“This is a suit for damages allegedly sustained by the plaintiff as a result of an intersectional collision which occurred at approximately 8:30 A.M. on October 26, 1978 at the intersection of State Highway 1146 and La.-U.S. Highway 171 in Vernon Parish, Louisiana. The intersection is located within the municipal boundaries of the Village of Rosepine, Louisiana.
“La.-U.S. Highway 171 (now a 4-lane highway) was, at the time of the accident, a major two lane asphalt highway which ran generally north and south. Highway 1146 was a much smaller two-lane black-topped highway which ran generally east and west. The intersection of the two highways was controlled by a single three-phase semaphore traffic signal.
“At the time of this accident, either in connection with or in preparation for construction work on Highway 171, temporary stop signs had been put in place facing traffic on Highway 1146. The evidence is conflicting as to the stage of the construction work on the date of the accident.
“The traffic light had apparently been struck in some fashion (no other explanation appears) and was twisted at an angle of perhaps as much as 45 degrees.
“Immediately prior to the accident, the plaintiff, Gyles F. Stephens, was driving a 1969 Ford pickup truck in an easterly direction on Highway 1146 approaching its *189 intersection with Highway 171. At the same time Francis DeRouen was driving a 1973 Mack tractor and tank trailer in a northerly direction on Highway 171 approaching the same intersection. The vehicles collided near the center of the intersection with the front of the tractor striking the right door of the pickup truck.
“Mr. Stephens says he stopped before entering the intersection, saw the tractor, but heard the brakes squealing on it, saw that he had a green light and, assuming the tractor was stopping, proceeded on through the intersection.
“Mr. DeRouen says the pickup truck was in the intersection when he first saw it, but avers that he too had a green light. He also says he had almost stopped at the moment of impact.
“Mr. Stephens filed this action naming as defendants (1) DeRouen; (2) Stephens Truck Lines, Inc. who was DeRouen’s employer; and (3) Department of Transportation and Development of the State of Louisiana. By third party demand of DeRouen and Stephens Truck Lines, Inc. the Town of Rosepine was impleaded. By additional third party petition of the Department, Louisiana Paving Company, Inc. was brought into the proceedings. By supplemental petition the plaintiff likewise im-pleaded Louisiana Paving Company, Inc. and the Town of Rosepine as defendants. Prior to trial plaintiffs action against. DeR-ouen, Stephens Truck Lines, Inc. and Aetna Casualty & Surety Company were dismissed.
“It was stipulated that the traffic signal was owned by the Department and that pursuant to contract with the Town of Rosepine, the sole obligation of the town was to furnish the electricity to operate the light, change burned out bulbs and to notify the Department of a malfunction of the light.
LIABILITY
“The evidence leaves no question but that the traffic signal was twisted out of position so that a driver approaching from any direction saw a part of a red signal and a part of a green signal. The evidence likewise preponderates to the effect that at the time of and immediately prior to the accident in question, the light was malfunctioning in that it was going on all sides from a green phase to a yellow phase, and back to a green phase.
“Although the testimony of James L. Bosely, the elected town marshall, was much more equivocal by the time this matter reached trial, he had no difficulty finding when he investigated the accident shortly after its occurrence that the light was twisted and that both drivers claimed a green signal. On the accident report prepared by him at that time he reflected that both had a green light and concluded that the light was ‘messed up.’ There is considerable testimony by other disinterested persons of similar malfunction or other malfunction of this particular signal in the time period of a few days or weeks before and after the occurrence of this accident. Although there was some testimony by a Mr. Loftin who ran a service station and by an electrician for the Department, there is certainly no credible evidence to rebut the inference that the light was erroneously giving both drivers a green signal. There is no reason to question the corroborating testimony of Mr. G.W. Bass and Mr. Claude R. Walker that they had seen the same light malfunction in a similar manner within a relatively short time before or after this accident occurred.
“R.C.C. Article 2317 provides in part:
‘We are responsible, not only for the damages occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody
“The strict liability provided by C.C. Art. 2317 is applicable to public bodies if all criteria are met. See Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980).
“An injured party seeking damages under Art. 2317 need not prove negligence, that is, that any particular act or omission on the part of the defendant caused his *190 injuries. He must only prove that the thing which caused the damage was in the care or custody of the defendant, that the thing has a vice or defect, that is, that it occasioned an unreasonable risk of injury to another, and that his injury was caused by the defect. Once these elements are proven, the custodian can escape liability only by showing that the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Loescher v. Parr, 324 So.2d 441 (La.1976); Jones v. City of Baton Rouge, supra; Shipp v. City of Alexandria, 395 So.2d 727 (La.1981).
“In the instant case the traffic signal was malfunctioning by simultaneously exhibiting a green signal to drivers on highways which intersected at right angles. Such a malfunction constituted a ‘trap’ and posed an unreasonable risk of injury to motorists who entered this intersection. The malfunctioning traffic signal was in the custody of the State, was defective and the injuries sustained in this case were caused by the defect. To escape liability the State must show that the accident was caused by the fault of the victim, the fault of a third person or an irresistible force. See Garrison v. State, Through Department of Highways, et al., 401 So.2d 528 (La.App. 2nd Cir.1981); Rehearing Denied July 15, 1981.
“The duty of a motorist on entering [an] intersection controlled by a semaphore exhibiting a green light was set forth in Champagne v. McDonald, 355 So.2d 1335 (La.App. 3rd Cir.1978) as follows:
‘A Motorist approaching an intersection controlled by semaphore signals, who is favored by a green light, is entitled to assume that traffic approaching the intersection from either side on a red light will comply with the red light and respect his right of way. Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (La.1964); Carter v. New Orleans Public Service, Inc., 305 So.2d 481 (La.1974). The favored motorist is not obligated to look to his left or his right before entering the intersection. Correge v. Webb, 284 So.2d 355 (La.App. 4th Cir.1973, writ refused); Bradley v. Allstate Insurance Co., 307 So.2d 132, supra; Keyser v. Triplett, 322 So.2d 294 (La.App. 1st Cir. 1975, writ refused); Welton v. Falcon, 341 So.2d 564 (La.App. 4th Cir.1976, writ refused), and will be held accountable only if he could have avoided the accident with the exercise of the slightest degree of care and fails to do so. Bradley v. Allstate Insurance Co., supra; Bourgeois v. Francois, supra. All that is required is that the favored motorist maintain a general observation of the controlled intersection. Jordan v. Great American Insurance Company, 248 So.2d 363 (La.App. 4th Cir.1971); Modica v. Manchester Insurance & Indemnity Co., 284 So.2d 791 (La.App. 4th Cir.1973).’
“Here, both Stephens and DeRouen entered the intersection on a green light, neither driver knowing there was a malfunction of the light, with each of them reasonably believing the other had a red light and would stop. Consequently neither were at fault.
“It is necessary to consider the liability of the Town of Rosepine. It was stipulated that the light was in the custody of the Department and that the only obligation of the Town was to furnish electricity for its operation, replace bad bulbs and to notify the Department of a malfunction. The evidence does not indicate that any lack of electricity or any defect in a bulb formed any part of the malfunction of the light which caused this accident. The Town is not liable under RCC Art. 2317 nor for any breach of its agreement to furnish electricity or replace bulbs.
“As to whether there was any negligence on the part of the Town of Rosepine in a failure to know and give notification of the malfunction, the circumstances of the intersection at all pertinent times must be considered. At all times pertinent to these proceedings the State or contractors working for the State were in the process of preparing to do so or actually were constructing highway improvements in the vicinity of this intersection. For instance, *191 the contractor had removed permanent stop signs erected at the intersection and had installed temporary signs to be used during the construction period. This accident occurred on Oct. 26, 1978. On Oct. 23, 1978 an employee of the Department was directed to relocate this traffic signal. In short, the State and its agents were very present and active on the highway around this intersection. They had a right to be there and there is no showing that they gave notice to the town of their intentions or that they were required to do so. Likewise there is no showing that the Town had notice, actual or constructive, of a malfunction of which notice should have been given to the Department. The Town of Rosepine is not liable for the damages sustained by this plaintiff nor has the State carried the burden of proving that the Town was guilty of an act or omission which would render the Town liable as a third party defendant.
“There is no showing that the contractor Louisiana Paving Co., Inc. is liable and judgment was rendered in favor of this defendant at the conclusion of the trial. The Department is solely liable.”
These conclusions of the trial court are fully supported by the record. We note, however, that the judgment for costs must be amended. The trial judge assessed costs as follows: “It is ordered, adjudged and decreed that defendant, State of Louisiana, through the Department of Transportation and Development, pay all costs of these proceedings.”
This portion of the trial court judgment must be amended in order to comply with LSA-R.S. 13:5112(A) which requires that a judgment for costs assessed against the State shall set forth such costs in a dollar amount. The trial judgment shall be amended to comply with this statute. Chesson v. American Hardware Mut. Ins. Co., 412 So.2d 186 (La.App. 3rd Cir.1982).
For the reasons assigned, the judgment of the trial court against the State of Louisiana, through the Department of Transportation and Development is amended to fix all costs of the trial court against the State of Louisiana, through the Department of Transportation and Development, pursuant to LSA-R.S. 13:5112(A) in the sum of $1,474.42. In all other respects the judgment of the trial court is affirmed.
Costs of this appeal are fixed in the amount of $185.20 and are to be paid by the State of Louisiana, through the Department of Transportation and Development.
AMENDED AND AFFIRMED.

. This appeal does not present any issue as to quantum.